43 F.3d 1473
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karyn E. WARMACK, Plaintiff-Appellant,
v.
DELTA AIR LINES, INC., Defendant-Appellee.
 No. 93-3902.
 United States Court of Appeals, Sixth Circuit.
 Dec. 15, 1994.
 
 Before: RYAN and BOGGS, Circuit Judges; and ROSEN, District Judge.*
 PER CURIAM.
 
 
 1
 This is a retaliatory discharge action brought pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C. Sec. 2000e et seq. Plaintiff Karyn E. Warmack appeals from the district court's judgment, after a bench trial, in favor of the defendant Delta Air Lines, Inc. For the reasons set out below, we AFFIRM.
 
 
 2
 * Warmack began working for Delta in October 1978. Delta employed her as a reservation sales agent until she was fired in February 1989. Reservation sales agents are responsible for answering customer questions, booking flights, and assisting people interested in flying with Delta. Warmack carried out her duties over the telephone.
 
 
 3
 On August 18, 1988, Delta placed Warmack on probation.[1] On August 26, 1988, Warmack filed a racial discrimination complaint with the Ohio Civil Rights Commission. This complaint alleged that Delta's decision to place Warmack on probation was motivated by racial animus. On January 6, 1989, while still on probation, Warmack answered a phone call from Melissa Richter, a Delta customer. Warmack's supervisor, Betty Pyles, monitored this call.[2] After completing the call, Ms. Pyles called Warmack into her office and told her that her performance had been substandard, and that she had acted in a rude and condescending manner. Warmack recommended that they call Ms. Richter and ask her opinion; but Ms. Pyles told her this would not be necessary. Delta subsequently issued a "Final Warning" letter, thereby extending Warmack's probationary period.
 
 
 4
 Warmack filed a second discrimination charge on February 2, 1989. She alleged that the "Final Warning" letter and the extension of the probation were discriminatory, and done in retaliation for filing the discrimination charge the previous August. On February 6, 1989, Warmack called Ms. Richter at home. Ms. Richter told her she did not wish to get involved and inquired how Warmack had gotten her phone number.[3]
 
 
 5
 On February 7, 1989, Ms. Richter called Delta to express her concern about Warmack's phone call. The next day, a supervisor spoke to Warmack about the call, which Warmack admitted making. Warmack stated she had done so on the advice of counsel. Warmack's supervisor notified her that this was a serious violation of Delta policy and informed her that her file would be forwarded to Atlanta with a recommendation for termination.[4] Delta notified Warmack of her termination on February 16, 1989.
 
 II
 
 6
 Warmack claims that the district court's finding that she failed to establish a prima facie case of retaliation was erroneous. Specifically, Warmack contends that the district court was wrong to conclude that she failed to prove a causal connection between her protected activity and Delta's decision to fire her.
 
 
 7
 In reviewing a district court's factual findings after a bench trial in a Title VII action we will reverse only where we find clear error. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985); Wrenn v. Gould, 808 F.2d 493, 499 (6th Cir.1987).
 
 
 8
 Warmack claims that Delta fired her in retaliation for filing and investigating discrimination claims she had lodged against Delta. 42 U.S.C. Sec. 2000e-3 prohibits an employer from discriminating because an employee has "opposed any employment practice made unlawful by this subchapter; or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter." This case, by Warmack's admission, involves the "participation" clause.
 
 
 9
 To establish a prima facie retaliation case under the participation clause, Warmack must prove: (1) that she engaged in an activity protected by Title VII; (2) that Delta knew of her activity; (3) that Delta thereafter took an employment action adverse to her; and, (4) that there was a causal connection between her protected conduct and Delta's decision to fire her. Canitia v. Yellow Freight Sys., Inc., 903 F.2d 1064, 1066 (6th Cir.). cert. denied, 498 U.S. 984 (1990).
 
 
 10
 The district court found that there was no causal connection between the filing of the discrimination complaint and Delta's decision to fire Warmack. However, Warmack now argues that the District court misconstrued the claim. She argues that her claim is actually that Delta discharged her in retaliation for investigating, through the phone call to Ms. Richter, her discrimination claim.[5]
 
 
 11
 Warmack urges us to reverse based on the record before us. It is well settled that "an appellate court may affirm on any ground supported by the record, even though the ground relied on by the lower court was different from the one chosen by the appellate panel." Warda v. Commissioner, 15 F.3d 533, 539 n. 6 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 55 (1994). See also United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924); Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co., 772 F.2d 214, 216 (6th Cir.1985) (per curiam).
 
 
 12
 Warmack argues that the phone call to Ms. Richter is protected because she made it to aid the investigation of her discrimination complaint. Title VII protects such conduct, Warmack claims, even if it violates Delta's clear policies. Some conduct may be protected even if it violates the policy of the company. See, e.g., Heller v. Champion Int'l. Corp., 891 F.2d 432 (2d Cir.1989); Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564 (2d Cir.1989). Warmack also correctly notes that conduct covered by the participation provision is entitled to "exceptionally broad" protection. Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1304, 1312 (6th Cir.1989). However, while this protection is exceptionally broad, it is not infinite.
 
 
 13
 Warmack's own testimony establishes that the motive behind the phone call was not to aid in the investigation of her discrimination complaint.[6] At trial, defense counsel asked Warmack whether the testimony she gave at her deposition was correct:
 
 
 14
 Q: Do you see the question that was asked to you, "Ms. Warmack, why did you call Ms. Richter?" And the answer you gave was, "Well, I wanted to get some insight into, you know, during that time it was very difficult for me, and, thinking back over things, I wanted to try and get my life back on track. If there was any validity to what had been said about me before in the past, I wanted to, if I could, you know, resolve this matter, call her, and if I did offend her, I wanted to apologize to her. I also just wanted to find out if she felt that same way."
 
 
 15
 You said that testimony ma'am?
 
 
 16
 A: Yes, sir.
 
 
 17
 Q: That was your sworn testimony, correct?
 
 
 18
 A: Yes, sir.
 
 
 19
 Furthermore, defense counsel specifically asked Warmack about the intent behind the phone call.
 
 
 20
 Q: The next question that was asked to you was: "Was that information that you had hoped to provide in support of your discrimination charge?" and turning over to page 178, your answer, "Well it was never really my intention of wanting to involve her in that." Question: And you say it was not your intention? Answer: No. Question: Whose intention was it? Answer: It was no one's intention.
 
 
 21
 That was your testimony in this case, was it not, Ms. Warmack?
 
 
 22
 A: That is correct.
 
 
 23
 Warmack also never told Ms. Richter about the complaint, never asked Ms. Richter to call her attorney, and never informed her that she might be contacted by someone from the Ohio Civil Rights Commission or the EEOC. While these factors alone are not dispositive, they buttress Delta's claim that there was no investigatory motive behind the phone call.
 
 
 24
 Finally, Warmack claimed at trial that she made the phone call on the advice of counsel. Such a claim is unavailing. The attorney in question never testified at trial and the district court found that "[n]o probative evidence was presented supporting the assertion of 'advice of counsel'." We cannot say that this finding is clearly erroneous.
 
 
 25
 Therefore, to the extent Warmack's claim involves alleged retaliation for the filing of prior discrimination complaints, we cannot say that the district court's finding of a lack of causal connection between the claim and the firing is clearly erroneous. Both Warmack and Delta concede that, but for the phone call to Melissa Richter, Delta would not have fired her.
 
 
 26
 As for the claim that Delta fired Warmack because of the phone call to Melissa Richter, we accept Warmack's recommendation to decide based on the record. However, we affirm because it is clear that the phone call was not protected conduct. Warmack carefully avoids mentioning her deposition testimony in her briefs, and with good cause. This testimony demonstrates that her motive was not to assist in the investigation of her discrimination claim.[7]
 
 III
 
 27
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Warmack previously had been disciplined by Delta several times. She was placed on probation on January 8, 1982 and June 22, 1982. She had been placed on final warning status on December 29, 1983 and August 14, 1983. Finally, she had been recommended for termination on August 2, 1985. However, she was not fired. Warmack's problems included poor productivity, long lunches and breaks, unscheduled days off, improper dress, use of profanity, and lateness
 
 
 [2]
 To evaluate agent performance, supervisors monitor phone calls. The agents are aware that calls are monitored, but do not know that any specific call is being listened to
 
 
 [3]
 Warmack remembered the name and found the number in a phone book
 
 
 [4]
 The district court found that Delta "has a recognized policy prohibiting Delta employees from calling a customer for anything other than Delta business."
 
 
 [5]
 "Plaintiff engaged in two separate and distinct forms of protected conduct under the participation clause. First, she filed a charge of discrimination on August 26, 1988 and an additional charge for [sic] discrimination and retaliation on February 2, 1989.... Plaintiff also engaged in protected conduct on February 6, 1989 when she contacted Melissa Richter...." Appellant's Brief at 9. But see Appellant's Reply Brief at 5 ("Instead, this case is about plaintiff's attempt pursuant to Section 704(a) to gather evidence that was relevant at the time both to her original charge and her February 2, 1989 charge.")
 
 
 [6]
 By Warmack's own admission, the phone call was not related to the discrimination complaint. Therefore, we need not address the difficult question of when an egregious violation of reasonable company policy becomes unprotected, even if the violation was genuinely intended to aid the investigation
 
 
 [7]
 Because we hold that Warmack has failed to prove a prima facie case, we need not apply either the "burden shifting" analysis in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989) or the "pretext" analysis in Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248 (1981)