NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1260n.06

No. 12-3305

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Dec 06, 2012*
DEBORAH S. HUNT, Clerk

CYNTHIA COX-FRIETCH,                    )
                                        )
        Plaintiff-Appellant,            )        ON APPEAL FROM THE
                                        )        UNITED STATES DISTRICT
v.                                      )        COURT FOR THE SOUTHERN
                                        )        DISTRICT OF OHIO
OHIO BUREAU OF WORKERS'                 )
COMPENSATION; PATRICIA HARRIS,          )
                                        )
        Defendants-Appellees.           )
                                        )

BEFORE:  MARTIN and BOGGS, Circuit Judges; COLLIER, District Judge.[*]

PER CURIAM.  Cynthia Cox-Frietch appeals a district court judgment dismissing her civil

action alleging violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq.

Cox-Frietch began working for the Ohio Bureau of Workers' Compensation in 1990.  From

2004, until her termination in April 2010, Cox-Frietch worked as an employer management

supervisor.

Cox-Frietch's termination followed over two years of documented performance issues,

beginning with her October 2007 annual performance evaluation.  Cox-Frietch's supervisor, Steve

Dyer, gave her an overall rating of "satisfactory," but noted that she was "below target" on two goals:

---

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

1) conducting at least one field visit each quarter with each of the employees she supervised and 2) assisting her staff to meet their work expectations each quarter. Cox-Frietch's new supervisor, Patricia Harris, evaluated her as "below target" in the same two areas in her October 2008 annual performance evaluation. As a result of that evaluation, Cox-Frietch received an overall rating of "unsatisfactory," was denied a pay increase, and was placed on a performance-improvement plan. Also in October 2008, Cox-Frietch received a verbal reprimand from Harris for "failure of good behavior" based on her handling of an employee's conduct.

In January 2009, Don Urbansok, an employee supervised by Cox-Frietch, filed an internal Equal Employment Opportunity (EEO) complaint against her, claiming age discrimination. After an investigation, EEO Manager Sheri Fitzpatrick concluded that there was no evidence substantiating Urbansok's allegations of age discrimination, but that there was evidence that Cox-Frietch acted inconsistently in placing employees on action plans. On February 13, 2009, and March 2, 2009, Fitzpatrick reminded Cox-Frietch about monitoring employee performance deficiencies and applying policies equally to all employees to avoid the appearance of favoritism.

In a letter dated March 24, 2009, the Bureau notified Cox-Frietch that she was being issued a three-day working suspension for failing to comply with her performance-improvement plan, specifically noting her failure to monitor and follow-up with her staff. On April 8, 2009, Cox-Frietch and Harris signed a new performance improvement plan.

In February and March 2009, Cox-Frietch requested and was granted intermittent FMLA leave to care for her seriously ill mother. Cox-Frietch's mother died on March 25, 2009. Cox-Frietch used approximately seventy hours of FMLA leave.

The Bureau's FMLA policy requires employees to substitute paid sick leave for unpaid FMLA leave. Cox-Frietch's use of FMLA leave nearly depleted her sick-leave balance, but she continued to use her sick leave as it accrued following the expiration of her FMLA certification. On June 5, 2009, Harris placed Cox-Frietch on Physician's Verification status. Under the Bureau's Physician's Verification policy, an employee whose sick-leave balance falls below twenty hours may be required to submit a physician's verification for future absences due to illness or injury within three working days after the employee's return to work. The Physician's Verification policy provides that an employee's failure to provide a physician's verification may result in disciplinary action. After she was placed on Physician's Verification status, Cox-Frietch was regularly approved for requested sick leave.

In a letter dated July 29, 2009, the Bureau notified Cox-Frietch that she was being issued a five-day working suspension for failing to adequately supervise her staff, despite "receiving repeated direction from the [Bureau's] EEO Manager and your immediate supervisor."

On January 20, 2010, Cox-Frietch called in sick and spoke with an employee. Cox-Frietch's absence was because her son was sick. Although Cox-Frietch supplied a note from her own doctor's appointment on the day of her absence, she failed to provide a physician's verification supporting

her son's illness. Cox-Frietch was issued a five-day fine for violating the Bureau's Physician's Verification policy.

On March 3, 2010, Cox-Frietch was involved in a workplace incident with a subordinate employee that escalated into yelling. After an investigation and a predisclipinary meeting, the Bureau terminated Cox-Frietch's employment effective April 19, 2010. The termination letter informed Cox-Frietch that she had been found in violation of the provisions of the Bureau's Disciplinary Policy and Grid. The letter specifically explained that, on March 3, 2010, "you precipitated and/or participated in several different incidents that were disruptive to the Information Management work area and/or Governor's Hill Service Office. Your behavior was very inappropriate for [a] member of management."

Cox-Frietch subsequently filed a complaint against the Bureau and Harris, in her official capacity, alleging that the defendants interfered with her FMLA rights in violation of 29 U.S.C. § 2615(a)(1), and retaliated against her for exercising her FMLA rights in violation of 29 U.S.C. § 2615(a)(2). The district court subsequently granted summary judgment to the defendants.

We review the district court's judgment de novo. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 281 (6th Cir. 2012).

Employers are prohibited from interfering with, restraining, or denying the exercise of or the attempt to exercise any FMLA right. 29 U.S.C. § 2615(a)(1). To establish an interference claim, Cox-Frietch must demonstrate that: 1) she is an eligible employee under the FMLA; 2) the Bureau is an employer under the FMLA; 3) she was entitled to leave under the FMLA; 4) she gave the

Bureau notice of her intent to take leave; and 5) the Bureau denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

The district court held that Cox-Frietch failed to establish the fifth element of her interference claim. Cox-Frietch acknowledged in her deposition that she was neither denied the use of FMLA leave, nor dissuaded from using FMLA leave during February and March 2009 to care for her mother. Cox-Frietch instead argues that the Bureau interfered with her FMLA rights by placing her on Physician's Verification status based on her low sick-leave balance, which had been depleted due to her use of FMLA leave.

The FMLA specifically allows an employer to require an employee to substitute accrued paid sick leave for unpaid FMLA leave. 29 U.S.C. § 2612(d)(2)(B); 29 C.F.R. § 825.207(a). When an employee substitutes accrued paid sick leave for unpaid FMLA leave, an employer may require the employee to adhere to neutral policies governing the use of paid sick leave. *See* 29 C.F.R. § 825.207(a). The Bureau's Physician's Verification policy requires an employee to submit a physician's verification for future absences due to illness or injury within three working days after the employee's return to work and provides that an employee's failure to submit a physician's verification may result in disciplinary action. This policy does not conflict with the FMLA. Further the medical certification for leave is also appropriate. *See* 29 C.F.R. §§ 825.305, 825.313.

The FMLA also provides that "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." 29 C.F.R. § 825.220(c). Cox-Frietch contends that the Bureau's acknowledgment that her use of FMLA leave

caused her to be placed on Physician's Verification status constitutes direct evidence that the Bureau used her FMLA leave as a negative factor in fining and eventually terminating her. Cox-Frietch's five-day fine was not for "excessive absenteeism." Rather, the fine was for failing to submit a physician's verification in accordance with the Bureau's Physician's Verification policy.

Absent direct evidence, Cox-Frietch's retaliation claim is analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). To establish a prima facie case of retaliation under the FMLA, Cox-Frietch must demonstrate that: 1) she engaged in activity protected under the FMLA; 2) the Bureau knew that she was exercising her FMLA rights; 3) she suffered an adverse employment action; and 4) a causal connection existed between the protected FMLA activity and the adverse employment action. *See Seeger*, 681 F.3d at 283. The district court held that Cox-Frietch failed to produce any significant evidence of a causal link between her use of FMLA leave and her subsequent suspension, fine, and termination. Cox-Frietch points to the temporal proximity between her and her counsel's assertion of FMLA concerns and the adverse employment actions, but there is no evidence suggesting that she was disciplined or terminated for voicing those concerns. *See Dixon v. Gonzales*, 481 F.3d 324, 333–34 (6th Cir. 2007).

Even assuming that Cox-Frietch demonstrated a prima facie case of FMLA retaliation, she failed to show that the defendants' legitimate, nondiscriminatory reasons for her discipline and eventual termination were pretextual. Cox-Frietch's documented performance issues began well before she used FMLA leave. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1067 (6th Cir.

1990).   The temporal proximity between her assertion of FMLA concerns and the adverse employment actions alone is insufficient to establish pretext.  *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001).

The district court's judgment is affirmed.